**E-FILED**
Tuesday, 29 March, 2016 03:00:45 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRIAN C. KRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 13-3042 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Brian Kramer filed claims for disability insurance benefits and supplemental security income.

Following denial of the claims, the Plaintiff sought judicial review under 42 U.S.C. § 405(g).

Pending are two motions: the Plaintiff's for Summary Judgment and the Defendant's for Summary Affirmance.

## I. BACKGROUND

Brian Kramer was born on March 24, 1962, and was 39 years old at

the time of his alleged onset date, on April 1, 2001.  The Plaintiff, who is a high school graduate, alleges a number of medical problems.   These include borderline intellectual functioning, bipolar disorder with psychotic features, borderline personality disorder, status post right ankle surgery and chronic pain.  The Plaintiff now lives with his father in Florida.

A. Plaintiff's testimony

The Plaintiff testified at the hearing before Administrative Law Judge Joseph Rose (the "ALJ").  Prior to moving to Florida, the Plaintiff had done some seasonal work and a few odd jobs.  The Plaintiff decided to file for disability after being told by his doctor he is "high-strung, bipolar [and] depressed."  He had also broken his collarbone at work.  The Plaintiff testified his neck gets stiff after working for fifteen to twenty minutes.  He also has had problems with a knee, ankle and heel.  The Plaintiff was no longer taking medication for these problems due to transportation issues.

The Plaintiff testified that "high strung" refers to getting loud at times.  Although he did not know what triggered it, the Plaintiff testified he had mood swings from being bipolar.  At times, the Plaintiff feels

particularly low due to the depression.  On those occasions, the Plaintiff would sit around and not do anything.  The Plaintiff testified he took medication daily for depression and bipolar, which sometimes helped.

The Plaintiff testified that although he has a driver's license, he does not own a car so he rode the bus for transportation.  He has a couple of friends with whom he enjoys spending time.  The Plaintiff enjoyed hunting and fishing but has not engaged in those activities in years.

The Plaintiff testified that he has a high school diploma.  However, some records indicate he has a history of special education and cannot spell and does not read or write.  The Plaintiff had trained for a Certified Nurses' Aid program twenty years earlier.  That involved mostly hands-on training which required him to write only blood pressure readings.

The Plaintiff testified he also felt anxiety tied to his blood pressure. Counsel observed that Plaintiff was shaking frequently.  The Plaintiff stated he did not know what causes it but he does that "all the time."  The Plaintiff also reported that he was paranoid, thinking he's hearing things and looking around because people are "getting shot and stabbed and you

can never tell about anything" these days.

The Plaintiff testified that he had not used cocaine, marijuana or alcohol in about three or four months.  He was able to stop using those substances on his own once he stopped hanging around with the  wrong crowd.

The Plaintiff testified that he does his own shopping.  He bathes or showers at least every other day.  The Plaintiff's father transported him to the hearing.

Counsel for the Plaintiff presented an exhibit, which was a CT scan of the Plaintiff's brain showing mild to moderate cerebral atrophy.  He also introduced evidence of the Plaintiff's diagnosis of bipolar disorder with severe psychosis.  Counsel further noted that Plaintiff's Global Assessment of Functioning ("GAF") scores were consistently 50 or less.[1]

B. Medical evidence

---

[1]According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision (2000), a GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

From January of 2003 through February of 2005, the Plaintiff notes that he had GAF scores of 45, 48, 49, 52, 52, 49, 50, 50, 50, 58, 60, 55, 60, 56, 60, 44, 55, 60, 55 and 52.

From February of 2007 through August of 2007, the Plaintiff's GAF scores were 50, 45, 50, 50, 50, 50, 50 and 50.

From November of 2007 through February of 2010, the Plaintiff's GAF scores were 50, 50, 50, 50, 47, 50, 48, 48, 48, 48, 48, 48, 50, 50, 50, 50, 48, 43, 45 and 48.

In June of 2009, examining psychologist Dr. Christopher Jean observed the Plaintiff was alert, oriented, cooperative and appropriate. Dr. Jean found the Plaintiff's attention and concentration were within normal limits. No gross impairment in memory functioning was noted, based on the Plaintiff's ability to recall recent and remote events. He was able to perform simple mental exercises. Dr. Jean found that Plaintiff is capable of managing his own funds. Social functioning is marginal based on reports of limited interactions with the same age peer group. Additionally, Dr. Jean determined that functional ability is significantly impaired based on the

Plaintiff's bipolar features.  He determined a GAF of 50.

In July of 2009, state agency consultant Eric Wiener, Ph.D., reviewed the record and found that Plaintiff had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation of extended duration.  Dr. Wiener noted previous arrests and found that Plaintiff had moderate limits in his capacity to deal with others, the public and supervisors in an appropriate manner, given his legal history.  Dr. Wiener noted the Plaintiff could follow simple directions but may require occasional repetition.  He is able to concentrate for two hours out of an eight hour day.  The Plaintiff would perform better in a job with limited work-related changes and clear job-related duties specified.

In December of 2009, state agency consultant Pamela D. Green, Ph.D., reviewed the record and noted that Plaintiff had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration,

persistence or pace; and no episodes of decompensation of extended duration. Dr. Green noted that Plaintiff would be able to understand and remember simple instructions, but might have difficulties with more detailed instructions. She further opined that Plaintiff would be able to complete simple tasks and work procedures, and make work decisions but might have difficulty with maintaining attention and concentration for extended periods and at times may have difficulties following detailed instructions. Dr. Green noted that Plaintiff was mentally capable of performing basic routine tasks on a sustained basis, if he continued taking his medication. Dr. Green noted the Plaintiff's history of being socially inappropriate and difficulty with authority. Accordingly, she opined that he might prefer to work outside of direct contact with the public.

From June of 2010 through February of 2011, the Plaintiff's GAF scores were 50, 50, 50, 50, 50 and 50. The Plaintiff reported taking his medication but still having mood swings, hearing voices, paranoia when out in public, some rambling, some anxiety, limited memory and little socialization.

7

In February of 2011, the Plaintiff's mental status exam from Park Place Behavioral Health Care showed that Plaintiff was cooperative and his thought process was logical. The Plaintiff reported being depressed and said that his anxiety was the same.

In July of 2011, Kenneth L. Hobby, Ph.D., found the Plaintiff to be cooperative, attentive, appropriate and pleasant. Although the Plaintiff exhibited no tearfulness, hyperactivity or explosive behavior, Dr. Hobby noted the Plaintiff's mood during the interview was a little depressed and relaxed. He opined that Plaintiff's mood symptoms have in the past likely been induced or influenced by substance use. Dr. Hobby noted no problems in the Plaintiff's thought processes or thought content. He found that Plaintiff appears to have the intellectual capacity to learn some simpler semi-skilled work-like tasks. Dr. Hobby stated that Plaintiff appeared to be a rather unusual individual who would likely function well with minimum supervision. He opined that Plaintiff had the ability to understand, carry out, and remember basic work-like tasks and had no significant limitations in his ability to attend and sustain concentration on basic work-like tasks.

His pace was normal, steady and appropriate for completing such tasks.

On a mental assessment form, Dr. Hobby found no limitations in the Plaintiff's abilities to understand, remember and carry out simple instructions, and to make judgments on simple work-related decisions. Dr. Hobby indicated mild limitations in the Plaintiff's abilities to understand, remember and carry out complex instructions, and to make judgments on complex work-related instructions. Dr. Hobby found that Plaintiff's interview suggested antisocial and borderline personality traits.

C. ALJ's decision

The ALJ found that Plaintiff has the following severe impairments: borderline intellectual functioning, bipolar disorder and status post right ankle surgery. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ cited the opinions of Drs. Wiener and Green, who assessed a moderate limitation within the area of functioning. The ALJ relied on the

opinion of Dr. Hobby, who examined the Plaintiff, and did not identify any areas in adaptive functioning in which the Plaintiff had significant limitations.  The ALJ agreed with Dr. Hobby that Plaintiff's limitation as to social functioning is no more than mild.  The ALJ gave significant weight to the state agency opinions as to the Plaintiff's mental limitations, though he accorded the greatest weight to the opinion of Dr. Hobby.   The ALJ determined that Plaintiff had moderate difficulties with regard to concentration, persistence or pace.

The ALJ further found that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: occasional climbing of ramps, stairs, ropes, ladders, and scaffolds.  The Plaintiff would be limited to occasional balancing; limited to frequent stooping, kneeling, crouching and crawling; limited to frequent overhead reaching with the right upper extremity; due to moderate limitations in concentration, persistence or pace.  The ALJ found that Plaintiff is limited to understanding and remembering simple 1-2 step instructions and carrying out simple 1-2 step

routine and repetitive tasks; and was limited to occasional interaction with the public.

The ALJ noted no episodes of decompensation of an extended duration.  Because the Plaintiff's mental impairments had not caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the ALJ found that the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.  The ALJ also found the evidence did not establish the presence of "paragraph C" criteria.

The ALJ found that Plaintiff was unable to perform any past relevant work.  The Plaintiff had previously worked as a plumbing supervisor and air conditioning installer.

Based on the Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.

The ALJ presented the vocational expert with the following hypothetical: (1) an individual of the claimant's age, education and work

experiences; (2) limited to light work as defined by the regulations; (3) only occasional climbing of ramps and stairs, ladders, ropes or scaffolds, and balancing; (4) frequent stooping, kneeling, crouching and crawling; (5) frequent overhead reaching with right upper extremity; (6) limited to understanding and remembering simple one and two-step routine and repetitive tasks; and (7) only occasional interaction with the public.  The vocational expert testified that although such an individual could not do the Plaintiff's past relevant work, he could perform jobs such as tagger and street cleaner.

The ALJ also presented the vocational expert with a second hypothetical: (1) an individual of the claimant's age, education and work experiences and (2) who is unable to engage in sustained work activity on a regular and consistent basis.  The vocational expert testified no work would be available to an individual with such limitations.

Based on the testimony of the vocational expert, the ALJ found that Plaintiff would be able to perform jobs such as tagger and street cleaner, both of which qualify as light work at the unskilled level.  The vocational

expert testified there are approximately 289,000 jobs nationally and 7,900 in Florida as a tagger.  There are approximately 525,000 jobs nationally and 20,000 in Florida as a street cleaner.

Based on the foregoing, on September 12, 2011, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 1, 2001.

On January 22, 2013, the Appeals Council issued a decision finding no basis to review the ALJ's decision.

## II. DISCUSSION

### A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Yurt v. Colvin, 758 F.3d 850, 856 (7th

Cir. 2014) (citations omitted).  Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion."  Id. at 856-57.

The Plaintiff contends that the decision of the Commissioner is not supported by substantial evidence.  The Plaintiff alleges: (1) the ALJ erred in determining the Plaintiff's combination of mental impairments did not equal Listing 12.04 or 12.06; (2) although the ALJ found that Plaintiff has severe mental impairments, his RFC assessment does not consider how these impairments affect his functional ability as required by SSR 96-8p; and (3) the ALJ erred by not finding the Plaintiff's testimony to be substantially credible.

B. Plaintiff's impairments and Listing 12.04

The Plaintiff notes that while the ALJ found that Plaintiff's mental impairments satisfied the diagnostic criteria of Listing (of Impairments) 12.04 or 12.06, he found that Plaintiff's mental impairments did not meet

14

the Part B criteria.  Part B requires the Plaintiff's impairments result in two of the following four criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; and (4) repeated episodes of decompensation, each of extended duration.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(b).  The Plaintiff contends there is evidence of marked difficulties in each of the first three criteria.

As the Commissioner notes, Listing 12.06 references anxiety-related disorders.  Although the Plaintiff has reported anxiety, it does not appear that any medical source has diagnosed him with anxiety.  Accordingly, the Court concludes that Listing 12.06 is not at issue in this case.

The Plaintiff must show that his condition satisfied all of the specific criteria of Listing 12.04 or that it was at least equal in severity and duration to the criteria.  See Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004) (stating that an "applicant must satisfy all of the criteria in the Listing in order to receive an award of disability insurance benefits and supplemental security income under step three.").

15

The Plaintiff alleges that the objective evidence supports marked limitations in the three functional areas, as well as episodes of decompensation.  However, the ALJ discussed at length his findings that Plaintiff had mild restrictions in activities of daily living; mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and no episodes of decompensation of extended duration.  In evaluating the Plaintiff's mental condition, the ALJ's decision cited evidence in the record, including objective medical evidence, opinion evidence and other evidence in concluding that Plaintiff's impairments did not meet or medically equal Listing 12.04.

The Plaintiff has not shown that he meets all of the specified criteria of Listing 12.04.  The evidence does not establish that his mental impairments meet or equal the listing.  Accordingly, the Court concludes that the ALJ's findings are supported by substantial evidence.

<u>C. Plaintiff's mental impairments and RFC</u>

The Plaintiff alleges that, although the ALJ determined he has severe mental impairments, his RFC assessment does not consider how these

16

impairments affect his functional ability as required by Social Security Ruling 96-8p.  The Plaintiff has a history of a GAF score of 50 or below. Additionally, little consideration is given to the Plaintiff's borderline intellectual functioning, brain atrophy and history of special education. The Plaintiff contends the RFC finding does not account for all of his limitations based on the objective evidence and testimony.

The record shows that the ALJ considered the evidence related to the Plaintiff's impairments and accounted for these limitations due to moderate limitations in concentration, persistence or pace.  The Plaintiff was limited to understanding and remembering simple 1-2 step instructions and carrying out simple 1-2 step routine and repetitive tasks, and limited to occasional interaction with the public.

The Plaintiff does not identify what additional limitations are necessary due to his borderline intellectual functioning, brain atrophy and history of special education.  He does not cite evidence supporting his claims that he was unable to work.

The ALJ cited the mental health medical evidence and non-medical

17

evidence which showed that Plaintiff had the ability to work despite his impairments.  He considered the Plaintiff's mental status exams at Park Place Behavioral Center, which the ALJ found showed the Plaintiff was alert, oriented and cooperative.  The ALJ found that despite the Plaintiff's "mild to moderate" cerebral atrophy shown in an earlier CT scan, the Plaintiff performed within the borderline range of intelligence during his exam with Dr. Hobby.

The ALJ found that Plaintiff's psychiatric symptoms decreased with abstinence from substances and compliance with medication and treatment. Dr. Hobby had opined that Plaintiff's symptoms in the past may have been induced or influenced by substance abuse.  Accordingly, the ALJ's RFC finding is supported by objective medical evidence.

The ALJ gave little consideration to the Plaintiff's GAF scores, stating that while they were considered, the scores had little bearing upon the overall assessment of the Plaintiff's ability to perform the mental requirements of work activities.

The ALJ's summary dismissal of the GAF scores is troubling in that

18

it reflects an apparent tendency of some administrative law judges to discount evidence which is favorable to claimants. Here, although the most recent GAF scores were consistently 50 or less, the ALJ does not mention any specific scores. In Czarnecki v. Colvin, 595 F. App'x 635 (7th Cir. 2015), the Seventh Circuit observed:

> The ALJ did not mention any of the GAF scores from any physicians who examined Czarnecki, even though all of her GAF scores after the alleged onset of disability were between 40 and 50. As in another recent case, the problem here was the ALJ's "larger general tendency to ignore or discount" favorable evidence, "which included GAF scores from multiple physicians suggesting a far lower level of functioning" than the ALJ assigned.

Id. at 643 (citation omitted).

However, the Commissioner correctly alleges  that an ALJ need not give <u>any</u> weight to a GAF score. See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) ("GAF scores . . . are measures of both severity of symptoms and functional level. Because the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity. Accordingly, nowhere do the Social Security regulations or case law require an ALJ to determine the extent of

an individual's disability based entirely on his GAF score.") (citations and internal quotations omitted).

As the Court has noted, however, ALJ does address other evidence in the record which supports the finding that Plaintiff has only mild limits in activities of daily living and social functioning. Specifically, the ALJ's reliance on Dr. Hobby's opinion was reasonable and supported by evidence in the record. The ALJ also gave consideration to the opinions of Drs. Wiener and Green who found that, despite certain limitations, the Plaintiff was capable of work.

The ALJ properly accommodated the Plaintiff's limitations by restricting the Plaintiff to work with limitations to understanding and remembering simple 1-2 step instructions, carrying out 1-2 step routines and repetitive tasks, and occasional interaction with the public, i.e., not requiring a high degree of concentration, persistence or pace. The ALJ reasonably relied on the opinions of Drs. Wiener and Green and properly incorporated the limitation regarding interaction with the public into his RFC finding.

The ALJ also discussed the Plaintiff's daily activities and routine, which also support the mental RFC finding.

For these reasons, the Court concludes that the ALJ appropriately evaluated the evidence and explained his rationale based on the facts of the record.   Thus, he built a logical bridge between his decision and the evidence.  The Court concludes that the ALJ's RFC finding is supported by substantial evidence.

### D. ALJ's credibility finding as to Plaintiff

The Plaintiff notes that the ALJ used boilerplate credibility language that is found in many unfavorable decisions.  The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

See Tr. 23.  The United States Court of Appeals for the Seventh Circuit has criticized this or similar language that frequently appears in ALJ's opinions as "meaningless boilerplate."  See Parker v. Astrue, 597 F.3d 920, 922 (7th

21

Cir. 2010).

The use of the often-criticized boilerplate language by itself is not enough to warrant reversal and support a finding of disability. The use of such language is harmless if the ALJ provides additional reasons for his finding. See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012); Shideler v. Astrue, 688 F.3d 306, 311-12 (7th Cir. 2011). Thus, a remand is not necessary if the ALJ's credibility assessment is otherwise supported.

Here, the ALJ did consider the objective medical evidence and other evidence in finding that Plaintiff's complaints were not entirely credible. Pursuant to the applicable regulations, the ALJ considered the Plaintiff's medication, effectiveness of treatment, record inconsistencies and his activities of daily living. The ALJ determined that the mental health evidence in the record was inconsistent with the Plaintiff's allegations regarding the severity of his impairments. Upon considering the evidence, the ALJ determined that even though the objective medical evidence supported a finding that Plaintiff had limiting mental impairments, the record did not support the Plaintiff's alleged inability to perform any work.

The ALJ also considered the Plaintiff's compliance with medication and treatment for his mental symptoms and determined that Plaintiff's symptoms decreased with abstinence from substances. The ALJ also found that Plaintiff's exaggeration of physical limitations eroded his overall credibility based on the record as a whole. The ALJ also considered the Plaintiff's daily activities in evaluating his credibility.

The Court concludes that the ALJ's credibility finding regarding the Plaintiff's limitations was reasonable and supported by evidence in the record. Accordingly, substantial evidence supports the ALJ's credibility finding.

## III. CONCLUSION

For all of these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 11] is DENIED.

The Defendant's Motion for Summary Affirmance [d/e 16] is ALLOWED.

The Clerk will enter a Judgment affirming the decision of the Commissioner of Social Security.

ENTER: March 28, 2016

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge